UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BILLY CROMER,**

      **Plaintiff,**        CIVIL ACTION NO. 13-cv-14822

      **v.**        DISTRICT JUDGE GEORGE CARAM STEEH

**MICHIGAN DEPARTMENT**        MAGISTRATE JUDGE MONA K. MAJZOUB
**OF CORRECTIONS, et al.,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Billy Cromer, currently a prisoner at the Oaks Correctional Facility located in Manistee, Michigan, filed this *pro se* civil rights action on November 22, 2013, pursuant to 42 U.S.C. § 1983. (Docket no. 1.) This matter comes before the Court on three motions. The first motion is a Motion for Summary Judgment filed by Defendants Jeremy Bugbee, Warren Rose, Steve Rivard, Kelly Barnett, Jeremy Heinze, Wayne Groat, Jon Jacobs, Laura McCormick, Lori Scott, Daniel Tchorzynski, Latanya Jackson, and Kirk Kerkau. (Docket no. 28.) The second motion is Plaintiff's Motion for Default Judgment. (Docket no. 30.) The third motion is Defendant Susan Havelka's Motion for Summary Judgment. (Docket no. 35.) Plaintiff responded to Defendants' Motions (docket no. 39), and Defendants replied to Plaintiff's Response (docket no. 40). This action has been referred to the undersigned for all pretrial purposes. (Docket no. 26.) The Court dispenses with oral argument on the motions pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons that follow, the undersigned recommends that Defendants' Motions for Summary Judgment (docket nos. 28 and 35) be **GRANTED** and that Plaintiff's Motion for Default Judgment (docket no. 30) be **DENIED**.

**II.    REPORT**

    **A.     Background**

The events giving rise to Plaintiff's Complaint occurred while he was incarcerated at the St. Louis Correctional Facility (SLF) in St. Louis, Michigan. (Docket no. 1 ¶2.) Plaintiff alleges that on April 24, 2013, he received a bag of items that he had ordered from the commissary, and it was missing five bags of protein powder. (*Id.* ¶¶ 25-26.) Plaintiff claims that he notified the storekeeper, who reviewed the bag, confirmed that the protein powder was missing, and told Plaintiff that his account would be credited accordingly. (*Id.* ¶¶ 27-28.) According to Plaintiff, the storekeeper subsequently ordered a shakedown of Plaintiff's cell to search for the missing protein powder and then suggested that Plaintiff had to take the loss. (*Id.* ¶ 29.) Plaintiff asserts that he filed grievance SLF-13-05-0587-01h regarding the matter, to no avail. (*Id.* ¶ 31.) The Michigan Department of Corrections' (MDOC) investigation into Plaintiff's grievance revealed that Plaintiff's cellmate had purchased an identical commissary order except for the protein powder and that after receiving their orders, Plaintiff and his cellmate switched bags so that Plaintiff could claim the missing protein powder.[1] (Docket no. 40-2 at 18.) The MDOC denied Plaintiff's grievance on the basis that he was being untruthful and trying to circumvent the system by seeking reimbursement to which he was not

---

[1] Defendants submitted a copy of Plaintiff's grievances filed in 2013 to the Court as an exhibit attached to their Reply Brief. (Docket no. 40-2.)

entitled. (*Id.*)

Plaintiff alleges that after he filed a grievance regarding the commissary store incident, Defendant Kerkau began making racial slurs, insults, and threats toward Plaintiff. (Docket no. 1 ¶ 33.) Plaintiff claims that Defendant Kerkau then performed a shakedown of his cell, poured Plaintiff's coffee into the toilet, opened multiple bags of food and poured them all over his cell, poured shampoo all over his legal papers, law books, and family pictures, and placed Plaintiff's grievance and its response on his pillow and a knife under his mattress between one of his magazines. (*Id.* ¶ 34.) Plaintiff alleges that he took the knife to Defendant McCormick to show her that Defendant Kerkau was making good on his threats against him, and he requested an immediate transfer out of his cell block.. (*Id.* ¶ 36.) According to Plaintiff, Defendant McCormick told him to stay out of Defendant Kerkau's way and to "learn how to jail." (*Id.* ¶ 37.) Plaintiff claims that he then filed grievance SLF-13-05-0569-17a regarding this incident. (*Id.* ¶ 39.) Plaintiff asserts that after he filed this grievance, he began receiving threats from Defendant McCormick. (*Id.* ¶ 41.) Plaintiff alleges that Defendant Barnett denied his Step II grievance appeal on June 5, 2013, and shortly thereafter, Defendant Jacobs summoned Plaintiff to his office and threatened him about making any further grievances. (*Id.* ¶¶ 42-43.)

Next, Plaintiff claims that on October 29, 2013, Defendant Rose accused him of spilling Kool-Aid on the floor. (*Id.* ¶ 44.) Plaintiff alleges that he tried to explain that he didn't do it, but Defendant Rose ordered Plaintiff to "cuff-up." (*Id.* ¶¶ 45-46.) Plaintiff claims that Defendant Tchorzynski put the handcuffs on so tight that he lost circulation in his fingers, wrist, and arms. (*Id.* ¶ 46.) Plaintiff asserts that Defendants Tchorzynski and Jackson escorted Plaintiff to segregation while walking him backwards at such an accelerated pace that Plaintiff's shoes came off. (*Id.* ¶ 48.)

Plaintiff further asserts that he kept telling Defendant Tchorzynski that his handcuffs were too tight and that Defendant Tchorzynski then started to bend Plaintiff's fingers backwards and upwards, which caused Plaintiff to scream and holler in pain. (*Id.* ¶ 49.) According to Plaintiff, Defendant Tchorzynski then kneed Plaintiff's abdomen, causing serious bruises and intense swelling. (*Id.* ¶ 51.) Plaintiff claims that he asked Defendant Heinze to be seen by a nurse for medical treatment, who denied his request. (*Id.* ¶¶ 53-54.) Plaintiff alleges that Defendant Scott appeared at his cell days later and asked him if he wanted to make a statement regarding his misconduct; Plaintiff claims to have answered in the affirmative and requested video footage of his escort to segregation. (*Id.* ¶ 55.) Plaintiff avers that on November 6, 2013, he appeared before Defendant Groat for an administrative hearing on his misconduct, who found that Plaintiff was guilty of assault and battery against prison staff and ordered Plaintiff to serve ten days detention in segregation and 30 days loss of privileges. (*Id.* ¶¶ 56, 59.) Plaintiff alleges that Defendant Groat's decision deprived Plaintiff of his constitutional right to marry his fiancée on November 14, 2013. (*Id.* ¶ 60.)

Plaintiff further alleges that Defendants Bugbee, Rose, Jacobs, McCormick, Havelka, Groat, Barnett, and Rivard all engaged in retaliatory conduct to cover up the acts of their subordinates, Defendants Jackson, Kerkau, Scott, Tchorzynski, and Heinze. (*Id.* ¶ 67.) Plaintiff claims that Defendants' actions described above violated his rights under the First, Eighth, and Fourteenth Amendments. (*Id.* ¶¶ 66-69.)

All of the Defendants except for Defendant Havelka filed a Motion for Summary Judgment on April 22, 2014. (Docket no. 28.) Plaintiff filed a Motion for Default Judgment on May 2, 2014. (Docket no. 30.) After being served, Defendant Havelka filed a Motion for Summary Judgment on May 21, 2014. (Docket no. 35.) On November 12, 2014, the Court ordered Plaintiff to file a

response to Defendants' Motions for Summary Judgment. (Docket no. 37.) Plaintiff did so on December 10, 2014 (docket no. 39), and Defendants replied to Plaintiff's Response on December 17, 2014 (docket no. 40.)

**B.     Governing Law**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

Federal Rule of Civil Procedure 55(a) permits the clerk of the court to enter a default when a party fails to plead or otherwise defend and that failure is shown by affidavit or otherwise. Only after a party has obtained a default may he obtain a default judgment pursuant to Rule 55(b). *Heard v. Caruso*, 351 F. App'x. 1, 15-16 (6th Cir. 2009) (it is procedurally improper for a party to move for entry of a default judgment without first seeking entry of a default from the clerk of the court).

**C.     Analysis**

   *1.     Defendants' Motions for Summary Judgment [28] [35]*

Defendant Havelka, in her Motion for Summary Judgment, adopts and incorporates the arguments advanced by her co-Defendants in their Motion for Summary Judgment and asserts that those arguments are equally applicable to her; she does not set forth any additional or distinct arguments. (*See* docket no. 35.) Consequently, the undersigned will address Defendant Havelka's Motion for Summary Judgment contemporaneously with the Motion for Summary Judgment filed by Defendants Bugbee, Rose, Rivard, Barnett, Heinze, Groat, Jacobs, McCormick, Scott, Tchorzynski, Jackson, and Kerkau.

Defendants argue that Plaintiff's claims should be dismissed because he has failed to exhaust his administrative remedies under the Prison Litigation Reform Act. (Docket no. 28 at 13-18.) Specifically, Defendants assert that Plaintiff has failed to file any Step III grievance appeals regarding any of the allegations in his Complaint as to any defendant. (Docket no. 28 at 13.) Defendants attached Plaintiff's Step III Grievance Report to their Motion, which reveals that no records of any Step III grievance appeals were found for the period of May 2009 through the date of the report, February 26, 2014. (Docket no. 28-5.)

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a Section 1983 action. Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time

limits for filing grievances and other critical procedural rules. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Defendants attached a copy of MDOC Policy Directive 03.02.130 regarding prisoner grievances to their Motion. (Docket no. 28-4.) The Policy Directive requires a prisoner to file a Step I grievance within five days of attempting to resolve the grievable issue with prison staff. MDOC Policy Directive 03.02.130(V). If the prisoner is dissatisfied with the Step I response, he may file a Step II grievance within ten business days of receipt of the response. MDOC Policy Directive 03.02.130(BB). A similar procedure applies to the Step III grievance process in that if a prisoner is dissatisfied with the Step II response, the prisoner "must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form [], to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due. . . ." MDOC Policy Directive 03.02.130(FF). A prisoner's administrative remedies are exhausted once his complaints have been grieved through all three steps of the grievance process in compliance with [the] policy. MDOC Policy Directive 03.02.130(B).

In his Complaint, Plaintiff asserts that he has exhausted all available remedies by filing grievances SLF-13-05-0569-17a and SLF-13-05-0587-01h, which he alleges were denied at Steps I-III. (Docket no. 1 ¶ 63.) Plaintiff maintains his position in his Response to Defendants' Motions and claims that he is unable to provide copies of his grievances to the Court because they were destroyed by prison staff at various points of the litigation process. (Docket no. 39 at 4.) Plaintiff attached an affidavit to his Response in further support of his position. (*Id.* at 6.) In the affidavit, Plaintiff claims that he filed a grievance against each Defendant in this case and that upon receiving

a denial at Step II of the grievance process, he filled out Step III grievance appeal forms for each grievance. (*Id.*) Plaintiff claims that since he was in segregation at that time, he was reliant upon the corrections staff to take his mail from his cell door to the mailbox, so he presented his Step III appeal forms to the corrections officers in the segregation housing unit to be mailed. (*Id.*) Plaintiff asserts that he had no idea that his Step III grievance appeal forms were not being properly forwarded to Lansing, and if he had known, he would have grieved the corrections staff for the mishandling of his mail. (*Id.*)

Defendants counter that Plaintiff's "assertion that he was in segregation and had to rely on staff to mail his Step III grievance is inaccurate and did not impact his ability to file a Step III appeal" in grievances SLF-13-04-0569-17a and SLF-13-05-0587-01h. (Docket no. 40 at 4-5.) Defendants also filed Plaintiff's Grievance Summary Report as an exhibit to their reply brief, which reflects that Plaintiff only pursued these two grievances through Step II of the grievance process. (Docket no. 40-2.)

With regard to Plaintiff's grievance SLF-13-04-0569-17a, a copy of the Step II Grievance Response reveals that it was returned to Plaintiff on June 6, 2013. (*Id.* at 11.) According to MDOC policy, if Plaintiff was dissatisfied with the Response, he was required to file a Step III grievance appeal by June 20, 2013. However, Plaintiff's prison transit records indicate that he was released from the St. Louis Correctional Facility (SLF) to court on writ on May 30, 2013, and returned to SLF on August 13, 2013.[2] (Docket no. 40-3 at 3.) It is not clear whether Plaintiff received the Step II Grievance Response while he was away from SLF or whether he had any access to the MDOC

---

[2] Defendants submitted Plaintiff's prison transit records and cell history to the Court as an exhibit attached to their Reply brief. (Docket no. 40-3.)

-8-

grievance process at the temporary location. Thus, at the very least, the grievance process period should have resumed once Plaintiff returned to SLF on August 13, 2013, and Plaintiff should have filed his Step III grievance appeal for grievance SLF-13-04-0569-17a by the end of August 2013.

In his affidavit, Plaintiff does not provide any specific time frame as to when he filed his Step III grievance appeals, except that he did so while he was housed in the segregation unit. (*See* docket no. 39 at 6.) Plaintiff's cell history indicates that upon his return to SLF, Plaintiff was placed in the general population and that he was not moved to temporary segregation until October 29, 2013. (Docket no. 40-3 at 4.) If Plaintiff filed, or attempted to file, his Step III grievance appeals while in segregation, this would mean that Plaintiff did not do so until on or after October 29, 2013. As discussed above, a Step III grievance appeal for Plaintiff's grievance SLF-13-04-0569-17a should have been filed by the end of August, if not earlier; thus any Step III grievance appeal filed by Plaintiff while in segregation for this particular grievance was untimely.

This same analysis applies to Plaintiff's grievance SLF-13-05-0587-01h. For this grievance, Plaintiff filed the Step II grievance appeal after he had returned to SLF from being out on writ on August 28, 2013. After an extension of an additional fifteen business days, the Step II response was returned to Plaintiff on October 7, 2013. Under MDOC policy, if Plaintiff was dissatisfied with the Step II response, he was required to file his Step III grievance appeal by October 21, 2013. Plaintiff attests that he presented his Step III grievance appeal to the corrections staff while in segregation to be mailed; however, Plaintiff was not transferred to segregation until October 29, 2013. Thus, Plaintiff's Step III grievance appeal for grievance SLF-13-05-0587-01h was also untimely.

Accepting Plaintiff's allegations as true, that he gave his Step III grievance appeals to the

corrections staff for mailing while he was in segregation, it is undisputed that Plaintiff did not file, or present for filing, his Step III grievance appeals by the deadlines established by MDOC policy. Plaintiff's Step III grievance appeals were untimely; therefore, Plaintiff did not properly exhaust his administrative remedies. Defendants' Motions for Summary Judgment should be granted.[3]

### 2. *Plaintiff's Motion for Default Judgment [30]*

On May 2, 2014, Plaintiff moved for Default Judgment on the basis that Defendants failed to respond to his Complaint within the time allotted under Federal Rule of Civil Procedure 4. (Docket no. 30.) Plaintiff's motion is fails on both substantive and procedural grounds. First, in suits brought by prisoners under 42 U.S.C. § 1983, a defendant may waive the right to reply to the complaint; a prisoner plaintiff is not entitled to relief unless a reply is filed. 42 U.S.C. § 1997e(g). Moreover, all defendants who had been served in this matter filed a Motion for Summary Judgment on April 22, 2014. Procedurally, Plaintiff is not entitled to a default judgment under Rule 55 because he failed to first seek entry of a default from the clerk of the court. Plaintiff's Motion for Default Judgment should be denied.

### D.     Conclusion

For the above-stated reasons, the undersigned recommends that the Court **GRANT** Defendants' Motions for Summary Judgment (docket nos. 28 and 35) and **DENY** Plaintiff's Motion for Default Judgment (docket no. 30).

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS

---

[3]Because the undersigned recommends granting Defendants' Motions for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies, the undersigned need not address Defendants' alternative arguments of lack of personal involvement and immunity.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 29, 2015  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Billy Cromer and Counsel of Record on this date.

Dated: January 29, 2015         s/ Lisa C. Bartlett
                                Case Manager